709 A.2d 258

LESLEY GAY BLACKNER, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, PLAINTIFF–APPELLANT, v. CONTINENTAL AIRLINES, INC., DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 9, 1998—Decided April 24, 1998.

Before Judges NEWMAN, COLLESTER and LESEMANN.

*Roger W. Kirby,* admitted pro hac vice, argued the cause for appellant (*Goldstein, Lite & DePalma,* attorneys; *Mr. Kirby* of counsel, *Allyn Z. Lite* and *Robert J. Berg,* on the brief).

*Peter B. Van Deventer, Jr.* argued the cause for respondent (*St. John & Wayne,* attorneys; *Mr. Van Deventer* and *Douglas H. Amster* of counsel and on the brief).

The opinion of the court was delivered by

LESEMANN, J.S.C. (temporarily assigned).

Plaintiff Lesley Gay Blackner appeals from a Law Division order granting defendant's motion to dismiss her complaint with prejudice. The order was based on the court's determination that plaintiff's claim was preempted by § 1305(a)(1) of the Airline Deregulation Act of 1978 (ADA), 49 *U.S.C.App.* 1305(a)(1), which provides that no state may enforce any law "relating to rates, routes, or services" of an air carrier. The facts of the case can be simply stated and are essentially undisputed.

Plaintiff purchased a round-trip ticket from Continental Airlines (Continental) to travel from Jacksonville, Florida to Newark and then return to Jacksonville. The total cost of the ticket was $210. Thereafter she lost her return ticket. When she inquired of Continental, she was told that Continental would replace the lost ticket but would impose a $60 surcharge because of the loss. Believing she had no practical choice in the matter, plaintiff followed Continental's mandated procedure, but then instituted this suit.

In her complaint plaintiff alleges that the $60 surcharge bears no reasonable relationship to any cost actually incurred by Continental to replace her lost ticket. She thus describes the surcharge as a "penalty," unlawful "under the contract law of New Jersey and the other states." She also includes in her complaint additional counts for unjust enrichment and breach of a covenant of good

faith and fair dealing which she says exists by implication in her contract with Continental.[1] She seeks damages and counsel fees and asks that the suit be certified as a class action on behalf of all other persons who have been assessed an improper penalty by Continental because of a lost ticket.

Defendant's motion to dismiss was grounded in the preemption argument noted above. The court agreed with that position and, accordingly, dismissed the complaint. Plaintiff's appeal followed. Since we are satisfied that the trial court's decision is required under controlling decisions of the United States Supreme Court, we affirm.

The ADA, adopted in 1978, represented a significant change in Congress' regulation of the airline industry. By its enactment, Congress abandoned the approach embodied in the Federal Aviation Act of 1958(FAA), which had empowered the Civil Aeronautics Board to regulate the interstate airline industry. By adopting the ADA, Congress determined that " 'maximum reliance on competitive market forces' would best further 'efficiency, innovation, and low prices' as well as 'variety [and] quality ... of air transportation services....' " *Morales v. Trans World Airlines, Inc.*, 504 *U.S.* 374, 378, 112 *S.Ct.* 2031, 2034, 119 *L.Ed.*2d 157, 164 (1992). The inclusion of § 1305(a)(1) within the ADA was a necessary part of that new approach:

> To ensure that the States would not undo Federal deregulation with regulation of their own, the ADA included a preemption provision, prohibiting the States from enforcing any law 'relating to rates, routes, or services' of any air carrier.
>
> [*Ibid.*]

---

[1] The "contract" governing the relationship between Continental and its passengers is a lengthy document referred to as a "contract of carriage." Pursuant to 49 *U.S.C.* § 41707, "an air carrier may incorporate by reference in a ticket or written instrument any term" of that contract and plaintiff's ticket here does refer to and incorporate those terms. The full contract, which is said to be available for inspection at any airport serving Continental or at any Continental office, expressly authorizes Continental to "impose a service charge of ... $60 per ticket for handling ... [a] request for refund of a lost ticket...."

In *Morales, supra*, the Supreme Court gave broad meaning to the term "relating to" rates, routes or services. It said that language not only prohibited States from "prescribing rates, routes or services" but also from taking any enforcement actions having a connection with or reference to airline 'rates, routes, or services'..." whether through laws "specifically addressed to the airline industry" or through more general statutes. 504 *U.S.* at 384, 112 *S.Ct.* at 2037, 119 *L.Ed.*2d at 167–68.

The Supreme Court next dealt with § 1305(a)(1) in *American Airlines, Inc. v. Wolens*, 513 *U.S.* 219, 115 *S.Ct.* 817, 130 *L.Ed.*2d 715 (1995), which involved an airline's attempt to effect retroactive changes in its frequent flyer program. The Court held that the Illinois Consumer Fraud Act could not be imposed on an airline because to do so would represent "intrusive regulation of airline business practices" by the state, which would violate § 1305(a)(1). However, it also held that suits based on the alleged contract between the airline and its customers were not preempted:

> We do not read the ADA's preemption clause, however, to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own self-imposed undertakings.... [T]erms and conditions airlines offer and passengers accept are privately ordered obligations 'and thus do not amount to a State's enact[ment] or enforce[ment] [of] any law, rule, regulation, standard or other provision having the force and effect of law within the meaning of Section 1305(a)(1).'
>
> [*American Airlines, Inc., v. Wolens, supra*, 513 *U.S.* at 228–29, 115 *S.Ct.* at 824, 130 *L.Ed.*2d at 725–26.]

Plaintiff claims that the principle of *Wolens*, which permits state court enforcement of contracts voluntarily entered into between an airline and its customers, authorizes this suit. But plainly, that is not so.

Plaintiff does not seek enforcement of any contract she had with Continental. Quite the contrary, the contract that exists between plaintiff and the airline clearly authorizes the surcharge of which plaintiff complains. What plaintiff seeks is not to enforce the contract but to overturn it through a declaration invalidating the $60 surcharge provision. And she seeks that relief because she

claims that the surcharge provision constitutes a penalty and is thus barred by the law of this state.

That reasoning is precisely what was rejected in *Wolens*, as well as *Morales*. In *Wolens*, Justice Ginsburg set out the principle clearly and succinctly: "This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach of contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." 513 *U.S.* at 232–33, 115 *S.Ct.* at 826, 130 *L. Ed.*2d at 728.

Plaintiff's suit clearly falls on the prohibited side of the line drawn in *Wolens*. The essence of her claim is an "enlargement or enhancement [of her rights] based on state laws or policies external to the agreement," which, she says, should invalidate a portion of the contract between her and the airline. The complaint violates the essence of the preemption provision of § 1305(a)(1) and thus it cannot stand.

The conclusion we reach here is consistent with that reached in *Vail v. Pan Am Corp.*, 260 *N.J.Super.* 292, 616 *A.*2d 523 (App.Div. 1992), and also with that reached by the Seventh Circuit Court of Appeals in *Statland v. American Airlines*, Inc., 998 *F.*2d 539 (7th Cir.) *cert. denied*, 510 *U.S.* 1012, 114 *S.Ct.* 603, 126 *L.Ed.*2d 568 (1993). In *Vail*, we held, consistent with *Morales*, that the language of § 1305(a)(1) must be given a broad reading and that it prohibited a state court suit seeking damages for alleged fraudulent representations by an airline that it had adopted a particular security program. We found that, "[p]laintiffs' claims quite obviously 'relat[e] to' airline fares and services" and, therefore, the suit before us was preempted by § 1305(a)(1). *Vail, supra*, 260 *N.J.Super.* at 299, 616 *A.*2d 523.

In *Statland*, the airline had collected a penalty when plaintiff canceled a ticket she had previously bought. Plaintiff claimed the airline improperly calculated the permissible amount of the penalty and sued in state court to recover the amount in dispute. Much of the court's decision discussed plaintiff's claim that she had a

right of recovery under federal law but, after the court rejected that argument, it turned to her attempt to maintain a suit under state law. That portion of plaintiff's suit was then dismissed on preemption grounds under § 1305(a)(1) and the holding of *Morales v. Trans World Airlines, Inc., supra.* The court said, "[w]e think it obvious that canceled ticket refunds relate to rates." *Statland, supra,* 998 *F.*2d at 542. We think the same here, and that the dismissal of plaintiff's complaint is, in all respects, consistent with our prior decision in *Vail* as well as with the federal precedent set forth in *Morales* and *Wolens.*

Affirmed.