TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00089-CV







The Boon Insurance Agency, Inc., Individually and on Behalf of All Others

Similarly Situated, Appellant


v.



American Airlines, Inc.; Continental Airlines, Inc.; Delta Airlines, Inc.; and America
West Airlines, Inc., Appellees





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT


NO. 98-08724, HONORABLE F. SCOTT MCCOWN, JUDGE PRESIDING 







 Appellant The Boon Insurance Agency, Inc. ("Boon") appeals the district court's
summary judgment in favor of appellees, American Airlines, Inc.; Continental Airlines, Inc.;
Delta Airlines, Inc.; and America West Airlines, Inc. (collectively, the "Airlines"). Their dispute
arises from certain restrictions on economy-class airline tickets that Boon purchased from the
Airlines. Boon brought a class-action suit (1) against the Airlines in district court charging that a
reissue fee and other penalties imposed by the Airlines when a holder of an economy-class ticket
fails to travel according to the ticket's original terms constitute illegal forfeitures and penalties
prohibited by state law. The Airlines moved for summary judgment on the sole ground that
Boon's claim is preempted by section 41713(b)(1) of the Airline Deregulation Act of 1978 (the
"Act"). (2) The district court granted the Airlines' motion. Boon complains on appeal that: (1) the
district court erred in requiring Boon to prove its claims were not preempted by the Act; (2)
summary judgment was improper because (a) the Act does not preempt claims that involve
common law breach-of-contract claims, and (b) genuine issues of material fact exist; and (3) the
district court erred by denying Boon's discovery request. Because we find that the district court
did not misplace the burden of proof, federal law preempts Boon's claim, there are no genuine
issues of material fact, and Boon's discovery request was not improperly denied, we will affirm
the district court's summary judgment. 


BACKGROUND

 The Airlines stipulated that for the purpose of summary judgment, the facts in
Boon's first-amended class-action petition are true. Our facts, therefore, are taken from the
pleadings before the district court.

 Between 1996 and 1997, Boon purchased economy-class airline tickets from each
of the Airlines. A ticket constitutes a "contract of carriage" between the passenger and the
airline, whereby the airline agrees to provide transportation between certain locations on specific
dates in return for the purchase price of the ticket and the passenger's agreeing to travel according
to the ticket's terms. An economy-class ticket is available for a lower price because it is subject
to conditions that a full-price, fully refundable ticket is not, including fees associated with
changing the terms of travel. (3)

 If a passenger with an economy-class ticket does not fly as ticketed and wishes to
rebook a flight, the passenger may apply the original fare toward a new ticket for travel within
a specified period of time. However, the passenger must also pay a "reissue fee" ranging from
fifty to seventy-five dollars. If the original ticket is not used or reissued, the passenger forfeits
the entire fare. At issue in this case is the potential forfeiture of the full ticket price and the
reissue fee imposed upon a passenger who fails to travel according to the ticket's terms. Boon
claims that the reissue fee and the retention of the fare amount to illegal forfeitures and penalties
and as such are unenforceable under Texas law. See Phillips v. Phillips, 820 S.W.2d 785, 789
(Tex. 1991).

 The Airlines moved for summary judgment on the ground that Boon's claims were
preempted by the Act, which specifically prohibits a State from enforcing a law or regulation that
relates to the price, route, or service of an air carrier. See Act § 41713(b)(1). The district court
granted the Airlines' motion, implicitly finding that Boon's claim was related to the Airlines'
prices and therefore preempted by the Act.

DISCUSSION

 Boon appeals from a summary judgment in favor of the Airlines. The propriety
of summary judgment is a question of law, and we review the trial court's decision de novo. See
Natividad v. Alexis, Inc., 875 S.W.2d 695, 699 (Tex. 1994). The standards for reviewing a
motion for summary judgment are well established: (1) the movant for summary judgment has
the burden of showing that no genuine issue of material fact exists and that it is entitled to
judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue
precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and
(3) every reasonable inference must be indulged in favor of the nonmovant and any doubts
resolved in its favor. See Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49
(Tex. 1985). The function of summary judgment is not to deprive litigants of the right to trial by
jury but to eliminate patently unmeritorious claims and defenses. See Swilley v. Hughes, 488
S.W.2d 64, 68 (Tex. 1972).


Burden

 The burden of demonstrating preemption is on the party who asserts it. See
Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 255 (1984). By its second issue, Boon argues that
the preemption burden and therefore the summary-judgment burden was that of the Airlines, and
the district court erred by improperly shifting these burdens to Boon. Boon's argument is based
solely on a statement in a brief filed by the Airlines in the district court that stated that Boon had
"a difficult burden" in demonstrating that its claims were not related to the price, route, or service
of the air carrier, and that it had "not met this burden." To the extent that this statement urged
the district court to place the burden on Boon, it is an incorrect statement of the law.

 Boon correctly states that to prevail on their summary-judgment motion, the
Airlines were required to prove that Boon's claims were preempted by the Act. See id. Stated
another way, we must address whether the Airlines established as a matter of law that section
41713(b)(1) of the Act preempts the claims asserted in Boon's suit. See State v. Foley, 950
S.W.2d 781, 784 (Tex. App.--Austin 1997, no writ). However, we find no evidence in the record
that the district court misplaced the Airlines' burden. The district court's judgment states simply,
"The Court, after examining the pleadings and the summary judgment evidence and hearing the
arguments of counsel, determines that [the Airlines] are entitled to summary judgment on all of
the claims raised by [Boon] in this lawsuit." The Airlines' arguably incorrect statement in their
district-court brief in no way demonstrates an improper action by the district court. We therefore
overrule Boon's second issue. 


Preemption

 In 1978, Congress enacted the Act, which largely deregulated domestic air
transport. See American Airlines, Inc. v. Wolens, 513 U.S. 219, 222 (1995). At the heart of the
dispute before us is the Act's preemption clause. Congress intended that the Act preempt state
law "to ensure that the States would not undo federal deregulation with regulation of their own." 
Morales v. Trans World Airlines, Inc., 504 U.S. 374, 378 (1992). The preemption clause states,
in relevant part, "A State . . . may not enact or enforce a law, regulation, or other provision
having the force and effect of law related to price, route, or service of an air carrier . . . ." Act
§ 41713(b)(1). (4)

 In Morales, the United States Supreme Court considered Travel Industry
Enforcement Guidelines, promulgated by the National Association of Attorneys General
("NAAG"). See 504 U.S. at 374. The NAAG guidelines purported to govern, inter alia, the
content and format of airline-fare advertising. See id. at 393-418. Several states, including
Texas, attempted to enforce the NAAG guidelines to stop allegedly deceptive airline
advertisements. See id. at 379. To determine whether the guidelines were preempted by the Act,
the Court was initially faced with delineating the ordinary meaning of the term "related to." See
id. at 383. The Court adopted the same meaning found in other preemption statutes: "having a
connection with, or reference to, airline 'rates, routes, or services.'" Id. at 384. (5) The "related
to" language was intended to be broad in order to express an expansive preemptive purpose. See
id. at 383. The Court concluded that the states' initiative related to airline rates, routes, or
services and therefore found that the fare-advertising provisions of the NAAG guidelines were
preempted by the Act. See id. at 391. The Court also noted that the Act does not preempt all
enforcement of state law against airlines. The Court recognized that some state actions might
affect airlines in "'too tenuous, remote, or peripheral a manner' to have pre-emptive effect" but
noted that the case before it did not present a "borderline question" and expressed no view about
where it would be appropriate "to draw the line." Id. at 390 (quoting Shaw v. Delta Air Lines,
Inc., 463 U.S. 85, 100 n.21 (1983)).

 Wolens involved a dispute between American Airlines and persons participating in
its frequent-flyer program. See 513 U.S. at 222. Individuals enrolled in the program earned
mileage credits when they flew American and could exchange those credits for tickets on
subsequent flights or upgrades to a higher class of service. See id. at 224. Although American
had reserved the right to change the terms and conditions of the program, when the airline
changed the program, suit was filed challenging the retroactive application of the modifications. 
See id. at 225. The program's participants claimed that American's actions violated the Illinois
Consumer Fraud and Deceptive Business Practices Act and constituted a breach of contract. See
id.

 The Supreme Court held that while the enforcement of the Illinois Act was
preempted by the Act, the passengers' breach-of-contract claim was not so preempted. See id.
at 228. The terms and conditions the airlines offered and the passengers accepted were privately
ordered obligations and did not amount to a state's enactment or enforcement of any law, rule,
regulation, standard, or other provision having the effect of law within the meaning of the Act. 
See id. at 229. The Court found that the Act does not prohibit state-court adjudication of routine
breach-of-contract claims, so long as the court confines its decision to the parties' bargain, with
no enlargement or enhancement based on state law or policies external to the agreement. See id.
at 232. The Court also noted that since contract law is not at its core "diverse, nonuniform, and
confusing" but is similar from jurisdiction to jurisdiction, it is unlikely that there will be a "large
risk of nonuniform adjudication" of what constitutes the "agreement" of the parties to a contract. 
See id. at 826.

 The Texas Supreme Court discussed Wolens and Morales in Continental Airlines,
Inc. v. Kiefer, 920 S.W.2d 274, 278-84 (Tex. 1996). Kiefer found that not only do common law
breach-of-contract claims fall outside the scope of the Act's preemption, but so do common law
negligence claims. See 920 S.W.2d at 278-84. With respect to breach-of-contract claims, Kiefer
adhered to the reasoning in Wolens, observing that the Act will prevent states from imposing their
own substantive standards with respect to rates, routes, or services but will not stop states from
affording relief to a party who claims and proves that an airline dishonored a term to which the
airline itself agreed. See id. at 280. The court reiterated the language of Wolens, stating that in
breach-of-contract claims, courts are confined to the parties' bargain. See id. The Kiefer court
concluded that the Supreme Court of the United States has placed a "very strict limitation on
permissible contract claims." See id. at 281.

 In this framework, we examine Boon's claim to determine whether it is preempted
by the Act. If the claim relates to the "price, route, or service of an air carrier," it is preempted.
Boon argues that its claim is not related to price, since state actions that have a tenuous, remote,
or peripheral effect on air fares are not preempted. See Morales, 504 U.S. at 390. While Boon
also points out that the Act's "related to" language should not be stretched to indeterminancy or
"for all practical purposes preemption would never run its course," (6) it is clear from Morales,
Wolens, and Kiefer that although the "related to" language is broad, it is not overly so and is
meant to encompass claims like Boon's. This Court has recently recognized that by the Act,
Congress sought to ensure effective airline deregulation by enacting "a very broad and sweeping
preemption to eliminate the possibility of any conflicting state regulation." City Public Serv. Bd.
v. Public Util. Comm'n, 9 S.W.3d 868, 876-77 (Tex. App.--Austin 2000, pet. filed). (7) We hold
that Boon's claim is "related to a price . . . of an air carrier" and is thus within the Act's
preemption. (8)

 Boon maintains that Kiefer allows any contract-related action under the Act if there
is little risk of nonuniform adjudication among the states. The Kiefer court examined Wolens,
emphasizing that since contract law is uniform, enforcing contracts is unlikely to lead to
nonuniform adjudication of contract claims based upon state law. See Kiefer, 920 S.W.2d at 280
(citing Wolens, 513 U.S. at 233 n.8). Boon reads Kiefer and Wolens incorrectly. Neither Kiefer
nor Wolens hold that every contract-related claim may be brought; only breach-of-contract claims
concerning the terms of the parties' agreement may be adjudicated in state court since contract law
is not at its core diverse, nonuniform, or confusing. See Wolens, 513 U.S. at 233 n.8; Kiefer,
920 S.W.2d at 280. The Wolens court specifically noted that it saw no significant risk of state-to-state nonuniform adjudication of standard airline-prepared agreements. See Wolens, 513 U.S. at
233 n.8. Kiefer does not, and in the face of the Act could not, expand the scope of contract
claims that may be brought before state courts.

 Boon argues that under Kiefer and Wolens, its breach-of-contract claim is not
preempted by the Act. It reminds this Court that although the Act is broad, it is not boundless. 
See Kiefer, 920 S.W.2d at 279. We agree that common law breach-of-contract and negligence
claims are not preempted by the statute, but Boon has not brought such a claim.

 "A claim for a breach of contract requires proof that (1) a binding contract existed;
(2) defendants breached the contract; and (3) plaintiffs suffered damages caused by the defendants'
alleged breach." East Tex. Med. Cancer Inst. v. Anderson, 991 S.W.2d 55, 62 (Tex. App--Tyler
1998, pet. denied); Ryan v. Superior Oil Co., 813 S.W.2d 594, 596 (Tex. App.--Houston [14th
Dist.] 1991, writ denied). 

 It is undisputed that in each instance of an economy-class ticket purchase by Boon
a binding contract, a contract of carriage, was created between Boon and the airline. Each
contract included the authorization of a surcharge if the ticket was changed. Boon does not look
to enforce the contract as written but instead seeks to modify the terms of the contract itself by
relying on state law. This Court "is confined, in breach of contract actions, to the parties'
bargain, with no enlargement or enhancement based on state law or policies external to the
agreement." Wolens, 513 U.S. at 223. If we were to adjudicate Boon's claim, we would be
applying state policy and law to determine the propriety of the reissue fee. Such application of
state law is preempted by the Act. See id. at 222. Boon's assertion of its claim as one of breach
of contract is an attempt to avoid the preemption clause and defeat the Act's intent. Boon does
not seek the benefit of its bargain, which calls for a reissue fee, but rather seeks to invalidate its
bargain by having this Court declare that the reissue fee is a penalty clause. The Act prevents us
from doing so. To the extent that Boon complains that its claims are not preempted by the Act,
its first issue is overruled. (9)


Genuine Issue of Material Fact

 Boon's first issue also asserts that by providing uncontroverted expert testimony
demonstrating that reissue fees bear no relation to ticket prices and that all states outlaw penalty
clauses, Boon has raised genuine issues of material fact. To support its claim, Boon relies on the
affidavits of David O. Stamey, a former vice-president of Continental Airlines, and Joseph M.
Perillo, a law professor.

 As a general rule, summary judgment is improper where an expert's uncontroverted
testimony supports the nonmoving party's case. See Anderson v. Snider, 808 S.W.2d 54, 55
(Tex. 1991). Although both Stamey's and Perillo's affidavits are uncontroverted, they do not
support Boon's proposition that its claim escapes preemption. "[C]ourts are charged with
interpreting deregulation statutes to determine whether Congress intended to preempt whatever
state action is offensive to the plaintiff in a given case." Foley, 950 S.W.2d at 786 (citing New
York Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 653-54
(1995); Morales, 504 U.S. at 383). We therefore determine the existence of federal preemption
as a matter of law. See id. at 784.

 Stamey's affidavit states that the reissue fee is unrelated to airline ticket prices since
it does not fluctuate or change according to the ticket price. In other words, the reissue fee is
constant and has no relation to the actual price of the ticket. Boon argues therefore it should be
able to bring its claim. However, even if the reissue fee remains constant, it has the effect of
raising the price of the ticket. Boon's claim relates to that price, i.e., the Airlines' charges for
an economy-class ticket. Although that price changed when Boon changed its travel itinerary,
Boon's claim remains related to price. See Wolens, 513 U.S. at 226 (finding that plaintiff's claim
involving frequent-filer miles relates to airline's charges in form of mileage credits for free tickets
and upgrades).

 Perillo's affidavit states that all jurisdictions in the United States hold that penalty
clauses are illegal and void. As such, if the reissue fee were deemed a penalty, it would be illegal
in any of the states. Boon argues therefore that adjudication of its claim would not involve any
application of state law or policy. Although the states may be uniform in their penalty-clause
jurisprudence, it does not follow that Boon's claims can be adjudicated without applying state law
or policy to the Airlines' economy-class ticket prices.

 We overrule the remainder of Boon's first issue.


Discovery

 By its third issue, Boon contends that the district court committed error when he
declined "repeated" requests for pretrial discovery. Boon argues that the discovery was needed
to determine whether the "defendant's fare forfeitures and reissue penalties 'relate to' their prices,
routes or services." Specifically, Boon requested information on the development,
implementation, and calculation of the reissue fees; the actual costs of the itinerary changes for
which the reissue fees were assessed; and the total revenue generated from these fees. 

 The record reflects that the district court quashed one motion for oral deposition.
We review the trial court's actions allowing or denying discovery for an abuse of discretion. See
TransAmerican Natural Gas Corp. v. Powell, 811 S.W.2d 913, 917 (Tex. 1991). A trial court
abuses its discretion when it acts in an unreasonable and arbitrary manner, or without reference
to guiding rules or principles. See Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). This Court may not reverse for abuse of discretion merely because we disagree
with the decision of the trial court. See Downer, 701 S.W.2d at 242.

 Here, the district court did not improperly deny Boon's request for discovery. The
information Boon sought would not have precluded summary judgment. As such, the denial of
the discovery request by the district court in no way prevented Boon from obtaining evidence that
would have allowed it to defeat summary judgment. The district court did not abuse his
discretion, and therefore, we overrule Boon's third issue.




CONCLUSION

 Having overruled all of Boon's issues, we affirm the district court's judgment.



 


 Lee Yeakel, Justice

Before Justices B. A. Smith, Yeakel and Patterson

Affirmed

Filed: March 30, 2000

Publish
1. See Tex. R. Civ. P. 42.
2. Congress enacted the Act in 1978. See Airline Deregulation Act of 1978, Pub. L. No. 95-504, 92 Stat. 1705 (1978). The Act contained a preemption clause that read in relevant part: 
"[N]o State . . . shall enact or enforce any law, rule, regulation, standard or other provision
having the force and effect of law relating to rates, routes, or services of any air carrier . . . ." 
Pub. L. No. 95-504, § 4(a), 92 Stat. 1705, 1707-08 (1978) (codified at 49 U.S.C. App. §
1305(a)(1)) (amended and recodified 1994). Congress recodified and revised many transportation
laws, including the Act, in 1994 and revised the preemption clause to read: "[A] State . . . may
not enforce a law, regulation, or other provision having the force and effect of law related to a
price, route or service of an air carrier . . . ." Act of July 5, 1994, Pub. L. No. 103-272, § 1(a),
108 Stat. 745, 1143 (1994) (codified at 49 U.S.C.A. § 41713(b)(1) (West Supp. 1999)). Congress
intended no substantive change by its 1994 revisions. See id. at 745.
3. As described in Boon's pleadings to the district court, "Economy-class tickets are subject
to travel restrictions which customarily require: a) tickets to be purchased a specified number of
days prior to departure; b) travel be completed by a specified deadline; c) minimum and maximum
stay requirements; and, d) seat and flight limitations."
4. See supra note 2. We cite the current code here for convenience.
5. Specifically, the Court referred to similar "related to" language in the preemption clause
of the Employee Retirement Income Security Act of 1974 (ERISA). See Morales v. Trans World
Airlines, Inc., 504 U.S. 374, 383 (1992). Boon argues that since the "relates to" language of
ERISA has been more narrowly construed in recent opinions, see California Div. of Labor
Standards Enforcement v. Dillingham Constr., N.A., 519 U.S. 316, 323 (1997); Hinterlong v. S.P
Baldwin, 720 N.E.2d 315, 320 (Ill. App. Ct. 1999), the Act language should likewise be more
narrowly interpreted. We will adhere to the Supreme Court's discussion of the Act's preemption
clause and will not extrapolate the later ERISA cases into speculation that the Supreme Court's
holdings in Morales and Wolens would be different today. 
6. New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514
U.S. 645, 655 (1995).
7. In City Public Service Board we contrasted the Act's broad preemption with the relatively
limited preemption of the Texas Public Utility Regulatory Act. See City Public Serv. Bd. v.
Public Util. Comm'n, 9 S.W.3d 868, 876-77 (Tex. App.--Austin 2000, pet. filed).
8. Other state courts have found similar claims also preempted by the Act. See Leonard v.
Northwest Airlines, Inc., 605 N.W.2d 425, 431-32 (Minn. Ct. App. 2000); Blackner v.
Continental Airlines, Inc., 709 A.2d. 258, 260 (N.J. Super. Ct. App. Div. 1998), cert. denied,
525 U.S. 1142 (1999).
9. Boon contends that if this Court finds that the Act preempts its claim, then it will have no
forum in which to seek relief. However, the Department of Transportation retains the authority
to investigate unfair and deceptive practices and unfair methods of competition by airlines. See
American Airlines, Inc. v. Wolens, 513 U.S. 219, 227 n.4 (1995).



 may not reverse for abuse of discretion merely because we disag